IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JOHN ORVILLE STUDY,
      Plaintiff,

vs.                             Case No. 3:08cv493/MCR/EMT

UNITED STATES OF AMERICA, et al.,
      Defendants.
_____/

## REPORT AND RECOMMENDATION

      Plaintiff, a state prisoner proceeding pro se and in forma pauperis, originally filed this civil action against the United States of America and the State of Florida seeking temporary and permanent injunctive relief enjoining Defendants from transferring him to another jurisdiction by any means other than through the Interstate Agreement on Detainers Act (IADA) (Doc. 1).[1] The United States filed a response requesting dismissal of the complaint (Doc. 32), and the State of Florida filed a motion to dismiss (Doc. 37). Plaintiff filed responses to the motions (Docs. 36, 46) and also sought leave to amend his complaint (Doc. 50). The undersigned granted the motion to amend and denied Defendants' dispositive motions as moot; however, the court rejected Plaintiff's proposed amended complaint because it appeared that some Defendants were misjoined, the amended pleading was not in proper form, and it failed to state a claim against one or more of the named Defendants (Doc. 59). Therefore, Plaintiff was directed to file a second amended complaint. Plaintiff did so, and his Second Amended Complaint is now before the court (Doc. 62). Neither the United States nor the State of Florida has filed a response to the Second Amended Complaint.

---

[1]Plaintiff, who is incarcerated at Washington Correctional Institution ("WCI"), is currently serving a seven-year sentence imposed by the Circuit Court in and for Madison County, Florida, Case No. 07-258-CF, on June 12, 2008 (*see* Doc. 1 at 4). He alleges that the State of Indiana placed a detainer against him for two counts of bank robbery shortly after his arrival at WCI in July 2008 (*id.* at 4).

Because Plaintiff is proceeding in forma pauperis, the court may dismiss the case if satisfied that the action is "(i) frivolous or malicious;  (ii) fails to state a claim on which relief may be granted;  or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  A complaint is frivolous under section 1915(e) "where it lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325, 109 S. Ct. 1827, 1833, 104 L. Ed. 2d 338 (1989).  Dismissals on this ground should only be ordered when the legal theories are "indisputably meritless," id., 490 U.S. at 327, or when the claims rely on factual allegations that are "clearly baseless."  Denton v. Hernandez, 504 U.S. 25, 31, 112 S. Ct. 1728, 1733, 118 L. Ed. 2d 340 (1992).  Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6).  Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997).  The allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff.  Davis v. Monroe County Bd. Of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997).  However, such acceptance should not be given blindly; only well-pleaded factual allegations are taken as true and only reasonable inferences are drawn in favor of the plaintiff.  See Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992); Marrero v. City of Hialeah, 625 F.2d 499, 502 (5th Cir. 1980);[2] see also Long v. Satz, 181 F.3d 1275, 1278 (11th Cir. 1999) (per curiam) ("reasonable inferences" drawn); Associated Builders, Inc. v. Ala. Power Co., 505 F.2d 97, 100 (5th Cir. 1974) ("unwarranted deductions of fact are not admitted as true").  A plaintiff must allege more than mere "labels and conclusions"; the complaint must include "[f]actual allegations  . . . [sufficient] to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964–65, 167 L. Ed. 2d 929 (2007) (citations and internal quotations omitted).  Indeed, "any conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts do not prevent dismissal."  Weissman v. Nat'l Ass'n of Sec. Dealers, 500 F.3d 1293, 1305 (11th Cir. 2007) (en banc) (Tjoflat, J., dissenting) (citing Associated Builders, Inc., 505 F.2d at 99).  The complaint may be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face.  See Bell Atl. Corp., supra (retiring the often-criticized "no set of facts"

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent all of the decisions of the former Fifth Circuit decided prior to October 1, 1981.

language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim). Upon review of the Second Amended Complaint, the court concludes that dismissal of this action is warranted.

I.      ALLEGATIONS OF THE COMPLAINT

Plaintiff names over seventeen Defendants in this action, including the United States, several federal agencies, several state and local agencies of the State of Florida and the State of Indiana, various federal and state officials, members of the news media in Indiana, and "Unknown-Doe" Defendants (Doc. 62 at 1, 4–7).[3] Plaintiff brings this action under 5 U.S.C. § 522a (the Privacy Act), 18 U.S.C. §§ 5005–5026 (the Federal Youth Corrections Act (FYCA)), and 42 U.S.C. § 1983 and Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971) for alleged violations of 28 U.S.C. § 534 and its implementing regulations, the FYCA, and the First, Fourth, Fifth, Sixth, and Fourteenth Amendments (*id.* at 2, 13–17). His claims concern Defendants' alleged failure to maintain accurate information concerning his criminal history and their dissemination of some of this information.

In his Second Amended Complaint, Plaintiff states that according to news media reports, on November 8, 2007, law enforcement authorities from Boone County, Hamilton County, and Putnam County in the State of Indiana disclosed at a press conference that Plaintiff was the prime suspect in several bank robberies in Indiana, and that he had been convicted of bank robbery in 1983 and served a prison sentence for that crime (Doc. 62 at 10). Plaintiff alleges several members of the news media in Indiana, including several named Defendants, reported this information in various media outlets (*id.* at 10–11). Plaintiff states that in December of 2008, two months after he filed the instant lawsuit, he reviewed his criminal history information maintained by the Federal Bureau of Investigation (FBI) and discovered that the first four entries in his FBI Identification Record (Entries 1, 2, 3, 4) included arrest and conviction information regarding his FYCA conviction and sentence in 1984 (*id.* at 11–12, 16). Plaintiff recently supplied a copy of this FBI Identification Record, dated

---

[3] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

December 5, 2008, to this court (*see* Doc. 72-3, attached FBI Identification Record).  The first four entries in that report are the following:

    1-    ARRESTED OR RECEIVED 1983/03/21
          AGENCY-FBI INDIANAPOLIS (INFBIIP00)
                AGENCY CASE-IP91A12911
                CHARGE 1-BANK ROBBERY SUSPECT


    2-    ARRESTED OR RECEIVED 1983/06/09
          AGENCY-USM INDIANAPOLIS (INUSM0100)
                AGENCY CASE-83280255-E
                CHARGE 1-ARMED BANK ROBBERY

          COURT-
                1984/05/04 DISPOSITION-
                CHARGE-ARMED BANK ROBBERY
                SENTENCE-
                1984/05/04 DISPOSITION-
                CHARGE-POSS STLN GOODS
                SENTENCE-60D CONFINEMENT
                CNTS FOR DISPOS & SENT UNK - YCA 5010B


    3-    ARRESTED OR RECEIVED 1983/06/09A
          AGENCY-FBI INDIANAPOLIS (INFBIIP00)
                AGENCY CASE-IP91A12911
                CHARGE 1-ARMED BANK ROBBERY
                      DISPOSITION-TOT ANOTHER AGENCY-
                CHARGE 2-POSSESSION OF BANK ROBBERY PROCEEDS
                      DISPOSITION-TOT ANOTHER AGENCY-
          COURT-
                1984/05/04 DISPOSITION-CONVICTED-
                CHARGE-ARMED BANK ROBBERY
                SENTENCE-
                PL GUILTY CUST ATT GEN FYC UNT DISCHARGED US


    4-    ARRESTED OR RECEIVED 1989/11/09
          AGENCY-USM INDIANAPOLIS (INUSM0100)
                AGENCY CASE-01482-028
                CHARGE 1-PAROLE VIOLATION

(Doc. 72-3, attached FBI Identification Record).

According to the verified allegations in Plaintiff's First and Second Amended Complaints, the facts underlying his conviction referenced in Entries 1–4 are as follows.  On January 18, 1984, in the United States District for the Southern District of Indiana, Case No. IP-83-50-CR, he pleaded guilty to possession of stolen goods and was convicted and sentenced pursuant to the FYCA (*see* Doc. 62 at 12; Doc. 56 at 14).  He "self-committed" to the Robert F. Kennedy Center on January 30, 1984 "for a study and observation," pursuant to 18 U.S.C. § 5010(e), and was returned to the district court on May 4, 1984, where he was resentenced, pursuant to § 5010(b), to the custody of the United States Attorney General for an indeterminate period of time not to exceed six years (Doc. 56 at 14). Plaintiff states he completed all requirements of his "treatment" and appeared before the United States Parole Commission, at which time he was granted a parole date of July 28, 1986 (*id.*).  He states he was released to parole on July 15, 1986, but in 1989, the Parole Commission issued a parole violator warrant (*id.* at 14–15).  Plaintiff self-surrendered on November 9, 1989, and on January 26, 1990, his "case analyst" recommended that he be immediately released because his maximum term of supervision expired on January 28, 1990 (*id.* at 15).

Plaintiff contends Defendants should have removed Entries 1–4 from his FBI Identification Record because those entries relate to his conviction and sentence under the FYCA, and that statute provides for automatic set-aside of the conviction upon service of his sentence.  He also contends the failure of federal agencies and officials to correct Entry 3, which inaccurately states he was convicted of armed bank robbery, and the dissemination of this inaccurate information by local officials in Indiana at the press conference in November of 2007, violated the Privacy Act (5 U.S.C. § 552a), 28 U.S.C. § 534 and the federal regulations implementing that statute (28 C.F.R. §§ 20.01–20.38), and the First, Fourth, Fifth, Sixth, and Fourteen Amendments.  Additionally, Plaintiff appears to bring state law claims of defamation against the law enforcement officials who conducted the press conference and the members of the news media who published this inaccurate criminal history information, pursuant to this court's supplemental jurisdiction.

Plaintiff asserts the failure to maintain accurate information concerning his 1984 conviction and the dissemination of this information caused him actual injury, including:  (1) pain and humiliation (as a result of being arrested, handcuffed, searched, booked, and incarcerated on several occasions), (2) endangerment to his life each time he was apprehended at gunpoint by law

enforcement, who believed he was an armed and dangerous suspect due to his inaccurate criminal history, (3) injury to his reputation, (4) "restricted or nonexistent" opportunities for schooling, employment, and professional licenses, and (5) erroneous convictions, arrest and detention (he contends his current incarceration has caused loss of property, income, investment, prosperity, and the right to provide for his children) (Doc. 62 at 15–18).

Plaintiff additionally alleges that at the time he reviewed his FBI Identification Record in December of 2008, he also received and reviewed his criminal history records maintained by the State of Florida and determined that the Entries 1, 2, and 4, created by the Collier County Sheriff's Office, Naples Police Department, and Suwannee County Sheriff's Department, respectively, included inaccurate information (*id.* at 12). Plaintiff has not supplied the court with the entries at issue, but he alleges the entries are inaccurate because Entry 1 "relates to an offense brought in bad faith," Entry 2 provides "no offense date for a non-existent crime," and Entry 4 "depict[s] Indiana charges" (*id.* at 12). Plaintiff states he requested that each agency correct the inaccurate information, but none of them have responded to his requests (*id.* at 15). Plaintiff contends the municipal law enforcement agencies have violated the federal regulations governing state and local criminal history record information systems, 28 C.F.R. §§ 20.20–20.25 (*id.*).

As relief, Plaintiff seeks the following: (1) monetary damages, (2) an injunction requiring Defendants to expunge arrest and conviction information concerning his FYCA conviction and sentence, as well as any arrests and convictions that "flow from" the FYCA conviction and sentence, from his criminal history records, (3) an injunction requiring all law enforcement agencies named as Defendants to implement policies consistent with federal law and regulations concerning the maintenance of criminal history information and provide employees training on these policies, (4) an injunction requiring the FBI to stop disclosing inaccurate information, and (5) an injunction requiring verification of all criminal history entries with computer images of documents from which the information is generated (*id.* at 17–18).

II. ANALYSIS

    A. <u>Direct claim for violation of the Privacy Act, 5 U.S.C. § 552a</u>

Plaintiff claims that local law enforcement officials from Boone County, Hamilton County, and Putnam Counties in Indiana violated his rights under the Privacy Act by disseminating false

information that he had been previously convicted of armed robbery (Doc. 62 at 13). He also claims that the FBI violated his rights under the Privacy Act by maintaining inaccurate information that he was convicted of armed robbery in 1984 (*id.* at 13, 17).

Initially, Plaintiff has failed to state a cognizable claim against local law enforcement agencies or officials because the Privacy Act authorizes civil lawsuits against only federal agencies, not individual federal defendants, state agencies, private entities, or state or local officials. *See* Pennyfeather v. Tessler, 431 F.3d 54 (2d Cir. 2005) (under Freedom of Information Act (FOIA), and accordingly, under Privacy Act as well, there is no private right of action against an official or employee of a municipal or state agency, rather than a federal agency); Schowengerdt v. General Dynamics Corp., 823 F.2d 1328 (9th Cir. 1987); Brown-Bey v. United States, 720 F.2d 467 (7th Cir. 1983); Ramirez v. Department of Justice, 594 F. Supp. 2d 58 (D.D.C. 2009); Buckles v. Indian Health Service/Belcourt Service Unit, 268 F. Supp. 2d 1101 (D.N.D. 2003); Stoianoff v. Commissioner of Motor Vehicles, 107 F. Supp. 2d 439 (S.D.N.Y. 2003). Additionally, to the extent Plaintiff attempts to bring a Privacy Act claim against the Department of Justice or the FBI based upon the maintenance of allegedly inaccurate information in his FBI Identification Record (Doc. 72-3) and the agencies' failure to amend or correct his record, his claim is barred by the FBI's regulation exempting the Identification Division Records System from the civil remedy provision of the Privacy Act. *See* 28 C.F.R. § 16.96(e); Alexander v. United States, 787 F.2d 1349, 1351–52 (9th Cir. 1986) (subject of FBI record was barred from taking advantage of civil remedies afforded by Privacy Act, to bring action against federal Government which, he alleged, was negligent in failing to remove from his record information that he believed state court had ordered expunged, where identification division of FBI maintained record and Department of Justice had promulgated rules exempting record system of that division from Privacy Act). Therefore, Plaintiff's claims under the Privacy Act are subject to dismissal.

    B.    Direct claim for violation of Federal Youth Corrections Act, 18 U.S.C. § 5021

Plaintiff appears to claim that Defendants' maintaining and disseminating information concerning his FYCA conviction and sentence violate the "set-aside" provisions of the FYCA (Doc. 62 at 16). Prior to October 12, 1984, the FYCA provided, in relevant part:

(a) Upon the unconditional discharge by the commissioner of a committed youth offender before the expiration of the maximum sentence imposed upon him, the conviction shall be automatically set aside and the commission shall issue to the youth offender a certificate to that effect.

(b) Where a youth offender has been placed on probation by the court, the court may thereafter, in its discretion, unconditionally discharge such youth offender from probation prior to the expiration of the maximum period of probation theretofore fixed by the court, which discharge shall automatically set aside the conviction, and the court shall issue to the youth offender a certificate to that effect.

18 U.S.C. § 5021 (1984), *repealed by* Pub. L. No. 473 § 218(a)(8), 98 Stat. 2027 (1984).

Initially, the set- aside provisions were repealed effective October 12, 1984, over five years prior to Plaintiff's discharge in January of 1990. *See id.* Furthermore, the Eleventh Circuit has held that the set-aside provisions of § 5021 do not provide for the destruction, segregation, or sealing of arrest records, nor do they require destruction of the record of conviction. United States v. Doe, 747 F.2d 1358, 1359–60 (11th Cir. 1984) (citing United States v. Doe, 732 F.2d 229, 230 (1st Cir. 1984), Doe v. Webster, 606 F. 2d 1226, 1230 (D.C. Cir. 1979), United States v. Doe, 556 F.2d 391, 392–93 (6th Cir. 1977); United States v. McMains, 540 F.2d 387, 389 (8th Cir. 1976)). Therefore, Plaintiff has failed to state a claim for relief under the FYCA.

  C.  Claims under 42 U.S.C. § 1983 and Bivens

Plaintiff brings claims under 42 U.S.C. § 1983 and Bivens for alleged violations of his rights protected by the Constitution and federal statutes and regulations governing the maintenance and dissemination of criminal history information. He claims that federal agencies violated the FYCA and 28 C.F.R. § 20.32 by maintaining and disclosing information concerning his FYCA conviction because it constitutes juvenile offense information which is excludable from federal criminal information systems (Doc. 62 at 16). He also claims that federal agencies violated 28 C.F.R. §§ 20.01–20.38 by failing to correct inaccurate information in Entry 3 of his FBI Identification Record (*id.* at 14–16). As to local agencies and officials, he claims that officials in Boone County, Hamilton County, and Putnam County in Indiana violated 28 C.F.R. §§ 20.01–20.38 by disseminating false conviction information at the press conference in November of 2007 (*id.* at 13). He additionally claims that the Collier County Sheriff's Department, Naples Police Department, and Suwannee County Sheriff's Department, local law enforcement agencies in Florida, violated 28

C.F.R. §§ 20.01–20.38 by failing to correct inaccurate information in Entries 1, 2, and 4 of his Florida criminal history record (*id.* at 15). Plaintiff asserts this conduct by federal and local agencies and officials also violated his rights under First, Fourth, Fifth, Sixth, and Fourteenth Amendments (*id.* at 13–17).

Section 534 of Title 28 of the United States Code requires the Attorney General of the United States to acquire, retain and disseminate criminal records. 28 U.S.C. § 534(a). Among the Attorney General's statutory obligations, as relevant to the issues in the instant case, are (1) to acquire, collect, classify, and preserve identification, criminal identification, crime, and other records, and (2) to exchange such records and information with, and for the official use of, authorized federal, state, and local officials. The Attorney General delegated this authority to the Director of the FBI. *See* 42 U.S.C. § 3771(b); 28 C.F.R. § .085(b). To implement its statutory obligation, the Attorney General issued regulations governing the collection, storage, and dissemination of criminal justice information. 28 C.F.R. §§ 20.01–20.38. Federal courts have recognized that the acquisition, preservation and dissemination of criminal records fulfills the compelling public need for an effective criminal identification procedure, thereby promoting effective law enforcement. *See* United States v. Rabadi, 889 F. Supp. 757, 759 (S.D.N.Y. 1995); Natwig v. Webster, 562 F. Supp. 225, 229 (D.R.I. 1983); United States v. Seasholtz, 376 F. Supp. 1288, 1290 (N.D. Okla. 1974).

Initially, Plaintiff is not entitled to relief under Bivens with respect to his claim that federal agencies and officials violated the set-aside provisions of § 5021 of the FYCA by maintaining criminal history information concerning his FYCA conviction. In light of the Eleventh Circuit's conclusion in Doe that the FYCA does not provide for the destruction, segregation, or sealing of arrest records, nor do they require destruction of the record of conviction, Plaintiff has failed to state a violation of that statute. *See* Doe, 747 F.2d at 1359–60.

Additionally, Plaintiff is not entitled to relief under § 1983 or Bivens with respect to his claims that federal and local law enforcement agencies and officials in Indiana violated 28 C.F.R. § 20.32 by maintaining and disseminating information concerning his FYCA conviction because it is excludable juvenile offense information. Section 20.32 provides, in relevant part:

**§ 20.32 Includable offenses.**

(a) Criminal history record information maintained in the III System [the Interstate Identification Index System that includes the criminal history record repositories of the FBI and states participating in the exchange of criminal history records] and the FIRS [the Fingerprint Identification Records System which includes the following FBI records: criminal justice information submitted by authorized agencies having criminal justice responsibilities and identification records, sometimes referred to as "rap sheets," which are compilations of criminal history record information pertaining to individuals who have criminal fingerprints maintained in the FIRS] shall include serious and/or significant adult and juvenile offenses.

(b) The FIRS excludes arrests and court actions concerning nonserious offenses, e.g., drunkenness, vagrancy, disturbing the peace, curfew violation, loitering, false fire alarm, non-specific charges of suspicion or investigation, and traffic violations (except data will be included on arrests for vehicular manslaughter, driving under the influence of drugs or liquor, and hit and run), when unaccompanied by a § 20.32(a) offense. These exclusions may not be applicable to criminal history records maintained in state criminal history record repositories, including those states participating in the NFF [National Fingerprint File].

28 C.F.R. § 20.32 (1993). In the instant case, the facts alleged by Plaintiff do not suggest that the offenses which are the subject of Entries 1–4 of his FBI Identification Record were "nonserious" offenses, as defined in § 20.32. Therefore, Plaintiff has failed to show that the information was excludable under federal regulations.

Plaintiff's claim under <u>Bivens</u> that federal Defendants violated 28 C.F.R. § 20.37 by failing to correct inaccurate information in Entry 3 of his FBI Identification Record is also without merit. Section 20.37 provides:

It shall be the responsibility of each criminal justice agency contributing data to the III System and the FIRS to assure that information on individuals is kept complete, accurate, and current so that all such records shall contain to the maximum extent feasible dispositions for all arrest data included therein. Dispositions should be submitted by criminal justice agencies within 120 days after the disposition has occurred.

28 C.F.R. § 20.37. However, FBI Identification Records are not subject to amendment or correction. *See* 28 C.F.R. § 16.46(f)(4); 16.96(e). Therefore, Plaintiff has failed to state a claim of denial of a federal right to correction of his FBI Identification Record. *See, e.g.,* <u>Varona Pacheco v. Federal Bureau of Investigation</u>, 456 F. Supp. 1024 (D. Puerto Rico 1978) (plaintiff was not entitled to amendment of Federal Bureau of Investigation's file so as to delete information claimed to be false

and untrue since information maintained in the FBI central record system has been exempted from the correction and amendment provisions of the Privacy Act).

Finally, Plaintiff's allegations that federal, state, and local law enforcement officials violated his constitutional rights by disseminating inaccurate information regarding the nature of his 1984 conviction at the press conference in 2007 and failing to correct this inaccurate information, as well as failing to correct the inaccurate information in his Florida criminal history records, fail to state a claim for relief.  As noted *supra*, Plaintiff claims that Defendants' conduct caused the following injuries:  (1) pain and humiliation (as a result of being arrested, handcuffed, searched, booked, and incarcerated on several occasions), (2) endangerment to his life each time he was apprehended at gunpoint by law enforcement, who believed he was an armed and dangerous suspect due to his inaccurate criminal history, (3) injury to his reputation, (4) "restricted or nonexistent" opportunities for schooling, employment, and professional licenses, and (5) erroneous convictions, arrest and detention (he contends his current incarceration has caused loss of property, income, investment, prosperity, and the right to provide for his children) (Doc. 62 at 15–18).

Initially, federal regulations provide that criminal history record information may be made available for issuance of publicity designed to effect the apprehension of wanted persons in connection with serious offenses.  28 C.F.R. § 20.33(a)(4).  In the instant case, the facts alleged by Plaintiff show that law enforcement officers disseminated information about Plaintiff's 1984 conviction at a press conference because he was the prime suspect in several bank robberies in Indiana and in furtherance of their efforts to apprehend him for those bank robberies.  Dissemination of the information in these circumstances was therefore authorized under 28 C.F.R. § 20.33.

Additionally, Plaintiff has failed to state a claim for relief on his claims of deprivation of his constitutional rights.  The Supreme Court has rejected claims of infringement of constitutional rights to privacy and due process with regard to law enforcement officials' publication of a person's arrest history, even when the arrest did not result in a conviction.  *See* Paul v. Davis, 424 U.S. 693, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976).  Paul involved a challenge to the practice of the Chief of Police of Louisville, Kentucky, and other local officials of distributing to merchants flyers containing the names and photographs of persons suspected of being shoplifters.  The flyers, each consisting of five pages of "mug shot" photographs, proclaimed that those depicted were "Active Shoplifters."

Included in the flyers was the name and "mug shot" of respondent, Davis, who had never been convicted of any criminal activity and whose only "offense" was having once been arrested on a shoplifting charge. Shortly after the circulation of the flyers, the charges against Davis were dismissed. The Supreme Court held that the distribution of the flyers involved no infringement of Davis' constitutionally protected rights. *Id.*, 424 U.S. at 705–07. The Court ruled that the claimed injuries to Davis' reputation invaded neither a "liberty" nor "property" interest protected by the Due Process Clause of the Fourteenth Amendment. *Id.* at 711–14. The Court similarly dismissed the claim that defendants' actions infringed upon a constitutional right to privacy. *Id.*

Paul has been widely construed as setting forth a "stigma-plus" test: to establish an interest sufficient to implicate Due Process safeguards, a person must be stigmatized in connection with a denial of a right or status previously recognized by state law. *See* Von Stein v. Brescher, 904 F.2d 572, 581 (11th Cir. 1990). In the Eleventh Circuit, defamation occurring other than in the course of dismissal from a job or in the termination or significant alteration of some other legal right or status does not suffice to constitute a deprivation sufficient to state a claim under section 1983. *Id.* at 582.

In Marrero, 625 F.2d at 514–15, the former Fifth Circuit considered the district court's dismissal of a complaint brought under section 1983 which alleged in part that the plaintiffs had been "deprived of their right to earn a living" when the Hialeah Police Department, in connection with a state prosecutor, announced to the media that a large amount of stolen property had been recovered in a raid on a jewelry store owned by the plaintiffs. The police officers in that case had executed a warrant authorizing a search for stolen items in the store. After their search uncovered none of the items listed in the warrant, the police obtained several victims of local robberies to assist in the identification of stolen items. Only one item, a bracelet, was identified as stolen. Nevertheless, the officers seized the entire stock of jewelry on the premises and arrested the plaintiffs for receipt of stolen property under Florida law. At the time of the arrests, the Hialeah Police Department and a state prosecutor announced to the media that more than $75,000.00 in stolen property had been recovered in the raid and that plaintiffs had been arrested. Subsequently, the state court granted the plaintiffs' motion to suppress all of the seized evidence except the gold

bracelet.  The items were returned to the plaintiffs and, as of the date the plaintiffs filed their section 1983 complaint, no further action had been taken against them.

On appeal, the plaintiffs argued that the district court had improperly dismissed their complaint for failure to state a cause of action under section 1983.  The Fifth Circuit agreed, holding Paul did not mandate dismissal of the plaintiffs' claims of injury to their personal and business reputations because, "on at least four independent grounds," the plaintiffs' claims, unlike the claims in Paul, involved deprivations of constitutionally protected interests.  6254 F.2d at 513.  First, according to the court, the plaintiffs could recover damages for injury to reputation caused by the illegal search and seizure.  Second, to the extent the defamatory statements injured the plaintiffs' business goodwill without due process of law, the complaint stated a claim upon which relief could be granted.  Third, to the extent the defamatory statements resulted in injury to the plaintiffs' "personal and/or business reputations and to their goodwill," the "stigma-plus" test was satisfied. Id. at 516.  Finally, because the injury to the plaintiffs' reputation was "intimately connected with the unlawful arrest of [the plaintiffs] and the unlawful search and seizure of practically the entire inventory of their store," the "stigma-plus" test was satisfied.  Id. at 517.

In a subsequent case, Bradford v. Bronner, 665 F.2d 680 (5th Cir. Unit B 1982), former members of the State of Alabama's capitol police force brought an action challenging their termination.[4]  One of the plaintiffs alleged that he had been stigmatized by his discharge and by derogatory comments made by one of the defendants to the press which implied that the plaintiff lacked the necessary qualifications for the position and was lazy.  Citing Paul, the former Fifth Circuit Court of Appeals affirmed the district court's dismissal of the plaintiff's complaint.  The Court distinguished Marrero on the basis that Marrero involved "a significant loss of business goodwill."  665 F.2d at 683 (emphasis supplied).

Noting that "[t]he Marrero decision has resulted in some confusion regarding the extent of § 1983 in this Circuit," the Eleventh Circuit acknowledged in Cypress Ins. Co. v. Clark, 144 F.3d 1435 (11th Cir. 1995) that "Florida law recognizes a property interest in business reputation, and

---

[4] In Stein v. Reynolds Securities, Inc., 667 F.2d 33, 34 (11th Cir. 1982), the Eleventh Circuit adopted as precedent all decisions of Unit B of the former Fifth Circuit.

that this state-created property right is protected by the Due Process Clause." 144 F.3d at 1437. But the Eleventh Circuit emphasized that, in <u>Marrero</u> itself, "the state not only defamed the plaintiff's business, but also deprived the plaintiff of <u>more tangible property interests</u>: the Hialeah Police Department illegally seized most of the plaintiff's inventory in violation of the Fourth Amendment." *Id.* (emphasis added). Thus the court clarified that "although injury to business [goodwill] may be <u>relevant</u> to damages in a § 1983 action, these damages would only be available in a case involving the deprivation of a <u>more</u> tangible liberty or property right." *Id.* (emphasis added).

In the instant case, Plaintiff's claims of pain and humiliation, endangerment to his life each time he was apprehended by law enforcement, injury to his reputation, and restriction of opportunities for schooling, employment, and professional licenses, do not sufficiently allege a tangible liberty or property interest to warrant constitutional protection. Furthermore, although some circuit courts have recognized the possibility of a constitutional claim where law enforcement disseminates false information after a proper request for correction has been made, and the false information deprived the person of liberty, *see* <u>Pruett v. Levi</u>, 622 F.2d 256, 258 (6th Cir. 1980) and <u>Paine v. Baker</u>, 595 F.2d 197, 201 (4th Cir. 1979), the facts alleged by Plaintiff show that the deprivations of his liberty occurred <u>prior</u> to the time he advised authorities of the inaccuracies in his criminal history information and requested its correction.[5] Therefore, relief under § 1983 or <u>Bivens</u> is not available on Plaintiff's claims that Defendants disseminated and failed to correct inaccurate criminal history information. *See* <u>Pruett</u>, *supra* (unless the FBI violated a duty which it owes to a person, such as contravening its regulations in some manner, it has not injured a person; the mere existence of an inaccuracy in the FBI criminal files is not sufficient to state a claim of a constitutional injury) (citing <u>Paul</u>, 424 U.S. at 712–14).

Moreover, to the extent Plaintiff contends he is otherwise entitled to judicial expungement of criminal history information maintained in state and federal criminal history information systems, he is not entitled to such relief based upon the facts asserted in his Second Amended Complaint. Besides <u>Doe</u>, the FYCA case discussed *infra*, the undersigned has not found an Eleventh Circuit

---

[5] Plaintiff states he received the federal and state criminal history information records in December of 2008, after his most recent arrest and conviction for which he is currently serving a sentence (*see* Doc. 62 at 11–12; Doc. 72-2).

published opinion on expungement of criminal history information maintained by state or federal agencies.  However, the Fifth Circuit, prior to its 1981 split, ordered expungement of arrest records in a civil rights/voting rights case in which state officials had intentionally arrested blacks to prevent them from voting.  United States v. McLeod, 385 F.2d 734, 750 (5th Cir. 1967).  The expungement was used as a remedial measure for state officials' misconduct because there was no other remedy available to vindicate the wrongly charged individuals' rights.  *Id.*  However, in Rogers v. Slaughter, 469 F.2d 1084 (5th Cir. 1972), the Fifth Circuit held that the district court "went too far" in ordering expungement of references to Rogers' arrest, trial and conviction from a school board's and municipality's records, even though the conviction was unconstitutional.  469 F.2d at 1085.  The Fifth Circuit described the Court's authority to expunge as a "privilege . . . of exceedingly narrow scope" and determined that public policy required that the retention of records of Rogers' arrest and the subsequent proceedings "be left to the discretion fo the appropriate authorities."  *Id.*

The Fifth Circuit continued to follow McLeod and Rogers in Sealed Appellant v. Sealed Appellee, 130 F.3d 695 (5th Cir. 1997).  In Sealed Appellant, the party seeking expungement sought an order expunging all federal judicial records of his overturned federal conviction and all executive branch agency records of the charges underlying the overturned conviction.  *Id.* at 696.  The court held that in order to have standing to seek expungement of records "outside the sphere of the court's own record," the party seeking expungement must assert an affirmative violation of constitutional or statutorily-created rights by the government actors holding the records.  130 F.3d at 696–97, 699. The court found no allegation that any governmental agency was using information adversely to the defendant, for example, by denying him benefits that an unconvicted person would be entitled to receive; instead, he claimed only that the records "interefere[d]" with his career in law enforcement. *Id.* at 700.  Noting the government's "weighty interests" in keeping its records unredacted, as well as the Congressional mandate in 28 U.S.C. § 534 that the Attorney General "acquire, collect, classify, and preserve" all records concerning crime, and the valid law enforcement need of potentially utilizing the information to further investigate related crimes, the court determined that in the absence of any showing of an agency's or official's affirmative misuse of the subject information, the government's interests outweighed the defendant's.  *Id.* at 702.

In the other Circuit Courts that have recognized an inherent equitable power to order expungement, relief is usually granted only in "extreme circumstances."[6] *See* <u>Geary v. United States</u>, 901 F.2d 679, 679–80 (8th Cir. 1990); <u>United States v. Noonan</u>, 906 F.2d 952, 957 (3d Cir. 1990); <u>United States v. Friesen</u>, 853 F.2d 816, 817 (10th Cir. 1988); <u>Allen v. Webster</u>, 742 F.2d 153, 155 (4th Cir. 1984); <u>Doe v. Webster</u>, 606 F.2d 1226, 1230 n.8 (D.C. Cir. 1979); <u>United States v. Schnitzer</u>, 567 F.2d 536 (2d Cir. 1977); <u>United States v. Doe</u>, 556 F.2d 391 (6th Cir. 1977); <u>United States v. Linn</u>, 513 F.2d 925 (10th Cir. 1975). In <u>Schnitzer</u>, the Second Circuit advised that extreme circumstances may exist

> where procedures of mass arrests rendered judicial determination of probable cause impossible, <u>Sullivan v. Murphy</u>, 478 F.2d 938, 968–69 (D.C. Cir.), *cert. denied*, 414 U.S. 880, 94 S. Ct. 162, 38 L. Ed. 2d 125 (1973); where the court determined the sole purpose of the arrests was to harass civil rights workers, <u>United States v. McLeod</u>, 385 F.2d 734 (5th Cir. 1967); where the police misused the police records to the detriment of the defendant, <u>Wheeler v. Goodman</u>, 306 F. Supp. 58 (W.D.N.C. 1969); or where the arrest was proper but was based on a statute later declared unconstitutional, <u>Kowall v. United States</u>, 53 F.R.D. 211 (W.D. Mich. 1971).

*Id.* at 540; *see also* <u>United States v. Benlizar</u>, 459 F. Supp. 614, 622–23 (D.D.C. 1978) (involving entrapment). Courts have adopted a case-by-case approach to requests for injunctions requiring expungement of criminal records, weighing the danger of unwarranted adverse consequences to the individual against the public interest in maintaining the records. *See* <u>Schnitzer</u>, *supra*; <u>Linn</u>, *supra*.

In the instant case, with regard to Entries 1–4 of Plaintiffs' FBI Identification Record, Plaintiff has failed to show that he has a right to expungement of the entries under the FYCA, as discussed *supra*. Furthermore, he has failed to show that the federal Defendants' failure to correct the allegedly inaccurate information in Entry 3, or the dissemination of this information by local authorities at the 2007 press conference, violated any constitutional or statutorily-created federal right. Likewise, to the extent Plaintiff seeks expungement of Entries 1, 2, and 4 of his Florida criminal history records based upon state and local agencies' failure to correct allegedly inaccurate information included in those entries, he has failed to show that the agencies' failure to correct the

---

[6] It is the position of the Seventh Circuit that in the absence of congressional authority, federal courts have no jurisdiction to order expungement of executive branch records. <u>United States v. Janik</u>, 10 F.3d 470, 472 (7th Cir. 1993).

inaccuracies violated any constitutional or statutorily-created federal right.[7]  Furthermore, the facts alleged by Plaintiff do not suggest the presence of circumstances satisfying the recognized grounds for judicial expungement of such information.  Indeed, comparing the facts alleged by Plaintiff with those of cases deemed sufficiently extreme by other courts to warrant expungement from criminal history records, the facts alleged here do not state a basis for judicial expungement of the entries from Plaintiff's criminal history records.  *Compare* Geary, 901 F.2d 679 (district court did not abuse its discretion in denying, without evidentiary hearing, petition for expungement of all criminal records concerning petitioner's arrest and acquittal on bank robbery charge 13 years earlier; in petition for expungement and memorandum in support of expungement, petitioner failed to offer any information suggesting existence of additional extenuating circumstances which would make his case sufficiently unusual or extraordinary to warrant expungement); Schnitzer, 567 F.2d 536 (defendant's allegation that retention of arrest record, following dismissal of indictment which did not concede defendant's innocence of the charge, would create problem because he was rabbinical student and may be asked to explain circumstances surrounding his arrest, did not present a harsh or unique situation with potential for harm within narrow bounds of class of cases where expungement of arrest record may be declared appropriate); Linn, 513 F.2d 925 (where defendant's arrest was lawful, pursuant to indictment returned by duly constituted grand jury, charges set forth in indictment were lawful ones not subject to any constitutional infirmity, there was no government harassment, trial judge held there was sufficient incriminating evidence against defendant to require submission of at least nine counts to jury, and jury acquitted defendant of all nine counts, defendant was not entitled to expungement of arrest record, notwithstanding acquittal); United States v. Carson, 366 F. Supp. 2d 1151 (M.D. Fla. 2004) (defendant not entitled to expungement where there was no assertion of lack of probable cause for arrest, and defendant's assertion of hardship or need for expungement was somewhat speculative and insufficient to outweigh law enforcement considerations); United States v. Howard, 275 F. Supp. 2d 260 (N.D.N.Y. 2003) (defendant's unsupported claim that he would not be eligible for police employment as a result of arrest record

---

[7] As previously noted, Plaintiff alleges Entry 1 "relates to an offense brought in bad faith," Entry 2 provides "no offense date for a non-existent crime," and Entry 4 "depict[s] Indiana charges" (Doc. 62 at 12).

for falsely assuming and pretending to be an officer and employee acting under the authority of the United States, did not require expungement of arrest records even though indictment was dismissed); United States v. Gillock, 771 F. Supp. 904 (W.D. Tenn. 1991) (defendant, former state senator convicted of various crimes in connection with sale of computer equipment to state and county agencies, was not entitled to have criminal record expunged on ground that it operated as barrier to further professional and individual growth as ordained minister, particularly in light of fact that expungement would have removed some of deterrent phase of record); United States v. Singleton, 442 F. Supp. 722 (S.D. Tex. 1977) (expungement of arrest records of police officers and one retired police officer who were arrested for illegal wiretapping but acquitted on all charges was matter for Congress, not for court, where movants did not introduce sufficient factual evidence presenting unusual facts to warrant departure from general rule that power to expunge an arrest record is narrow and should not be routinely used whenever criminal prosecution ends in acquittal but should be reserved for the unusual or extreme case and where each movant had and still had exemplary reputation in both general community and law enforcement community); Coleman v. United States, 429 F. Supp. 411 (N.D. Ind. 1977) (mere fact that person is not convicted on charges for which he was arrested does not automatically entitle subject of arrest record to expungement of that record); Hammons v. Scott, 423 F. Supp. 618 (N.D. Cal. 1976) (California arrestee, who was released from incarceration when charges were dropped, was not entitled to expungement of arrest record on ground that maintenance and dissemination of arrest records of persons who are not convicted of and do not plead guilty or nolo contendere to any crime arising from the arrest is violative of right of privacy, due process and presumption of innocence); United States v. Rosen, 343 F. Supp. 804 (S.D.N.Y. 1972) (even where a person has been acquitted of charges against him, arrest records and other materials of identification may be retained unless there is statute that directs return of such records, arrest was unlawful, or record of the arrest is the "fruit" of illegal seizure), *with* United States v. Van Wagner, 746 F. Supp. 619 (E.D. Va. 1990) (expungement appropriate where government conceded that indicted defendant was actually innocent after dismissing charges, and defendant proved he was suffering economic hardship because of record); United States v. Johnson, 714 F. Supp. 522 (S.D. Fla. 1989) (expungement of arrest record appropriate where Johnson was not convicted or acquitted by a jury, but court directed acquittal on ground of no probable for arrest

for charged crime, and Johnson would experience hardship because he was ready to accept employment and leave the country with his family, and "negative mark" of arrest record would likely jeopardize potential employment); <u>Natwig v. Webster</u>, 562 F. Supp. 225 (D.R.I. 1983) (expungement of arrest record from FBI files appropriate where plaintiff had been arrested on extortion charge but never indicted, and arrest record might jeopardize plaintiff's planned emigration to Australia); <u>United States v. Bohr</u>, 406 F. Supp. 1218 (E.D. Wis. 1976) (expungement of arrest record appropriate where indictment was dismissed 11 years earlier and defendant attorney was seeking to join another state's bar; United States did not oppose the motion or assert law enforcement need to keep records); <u>Menard v. Saxbe</u>, 498 F.2d 1017 (D.C. Cir. 1974) (FBI must expunge information from its criminal file when local agency which first reported information to FBI later reported information disputing accuracy of original information); <u>Benlizar</u>, 459 F. Supp. 614 (record of overturned drug conviction under FYCA ordered expunged because defendant had no prior record and made strong showing of entrapment).

    D.    <u>State law claims</u>

    Finally, to the extent Plaintiff brings state law claims of defamation, his claims should be dismissed.  It is well established that once Plaintiff's federal claims are dismissed, there remains no independent federal jurisdiction to support the court's exercise of supplemental jurisdiction over the state claims against Defendants.  *See* <u>Baggett v. First National Bank of Gainesville</u>, 117 F.3d 1342, 1352 (11th Cir. 1997).  Title 28 U.S.C. § 1367(c)(3) provides that the district court may decline to exercise supplemental jurisdiction over claims after it has dismissed all claims over which it has original jurisdiction.  *See also* <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 725–26, 86 S. Ct. 1130, 1138–39, 16 L. Ed. 2d 218 (1966).  Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction.  <u>Baggett</u>, 117 F.3d at 1353 (citing <u>Palmer v. Hospital Authority of Randolph County</u>, 22 F.3d 1559, 1569 (11th Cir. 1994); <u>Executive Software N. Am. v. United States Dist. Court</u>, 15 F.3d 1484, 1493 (9th Cir. 1994); <u>New England Co. v. Bank of Gwinnett County</u>, 891 F. Supp. 1569, 1578 (N.D. Ga. 1995); <u>Fallin v. Mindis Metals, Inc.</u>, 865 F. Supp. 834, 841 (N.D. Ga. 1994)).  Taking these factors into account in this case, the court concludes that Plaintiff's state law claims should be dismissed to permit him to pursue his state law claims in a more appropriate forum.  While

it would be convenient for Plaintiff to continue litigating his case in this court, this court has a substantial number of original jurisdiction cases awaiting review, and neither judicial economy nor fairness to other litigants support retaining jurisdiction of Plaintiff's state claims and delaying justice in other cases. Furthermore the state court is best equipped to research and rule on matters of state law, and comity would suggest that it should be allowed to do so.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That Plaintiff's federal claims be **DISMISSED** for failure to state a claim on which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

2.      That Plaintiff's state law claims be **DISMISSED** without prejudice to Plaintiff's right to assert them in state court.

3.      That this action be **DISMISSED**.

4.      That all pending motions be **DENIED** as moot.

5.      That the clerk be directed to enter judgment accordingly and close the file.

At Pensacola, Florida, this 4th day of March 2010.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

      **Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only</u>.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**